

⑫

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.

D-3    DeDAN C. MILTON,

                Defendant.

_____/

CRIMINAL NO. 2:09-CR-20559-3

HONORABLE GERALD E. ROSEN

VIOLATIONS:
18 U.S.C. § 371 (conspiracy)
18 U.S.C. § 666(a) (bribery)
18 U.S.C. § 1951 (extortion)
18 U.S.C. § 2 (aiding & abetting)

## THIRD SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES THAT:

### GENERAL ALLEGATIONS

At all times relevant to this indictment:

1.    The City of Detroit (hereinafter, "the City") was a municipal corporation and local government within the Eastern District of Michigan.

2.    Defendant DeDAN C. MILTON was an Executive Assistant to the then-Mayor of Detroit and an agent of the City.

3.    Kandia N. Milton was the then-Mayor of Detroit's City Council Liaison and an agent of the City whose duties included serving as the Mayor's intermediary and spokesperson with the Detroit City Council.

4.    Jerry M. Rivers was an officer with the Detroit Police Department.

5.    "Camp Brighton" refers to a 160-acre campsite in Genoa Township, Livingston County, Michigan, located near Interstate 96 and Grand River Road, which the City sold to a "Non-Profit Entity" in 2007 for $3.5 million.

6.    "8th Precinct" refers to the site of the Detroit Police Department's 8th Precinct police station, located near West Grand River and Six Mile Roads in Detroit, Michigan, which the City sold to "Real Estate Developer #2" in 2007 for $324,000.

7.    In each of calendar years 2003 through 2007, the City of Detroit received benefits in excess of $10,000 under a federal program involving a form of federal assistance.

## COUNT ONE

### (18 U.S.C. §§ 371, 666(a) and 1951 – Conspiracy to Commit Bribery and Extortion)

1.    The Grand Jury incorporates by reference paragraphs 1 through 7 of the "General Allegations" above as if they were set forth in full herein.

### THE CONSPIRACY

2.    Beginning in about 2003 and continuing until about at least October 2007, in the Eastern District of Michigan and elsewhere, defendant DeDAN C. MILTON, together with Jerry M. Rivers, Kandia N. Milton, and others known and unknown to the grand jury, did knowingly and intentionally conspire, combine, confederate and agree to commit offenses against the United States, that is –

### OBJECTS OF THE CONSPIRACY

a.  to corruptly solicit, demand, and accept things of value for DeDAN MILTON and Kandia Milton while they were aides in the administration of the Mayor of Detroit and agents of the City of Detroit, with the intent that DeDAN MILTON and Kandia Milton be influenced and rewarded in connection with business or transactions with the City of Detroit of a value of $5,000 or more, in violation of Title 18, United States Code, Sections 666(a) and 2; and

b.  to use DeDAN MILTON's and Kandia Milton's positions as aides in the administration of the Mayor of Detroit to knowingly and unlawfully affect interstate commerce by obtaining payments for DeDAN MILTON and Kandia Milton with the consent of the payors induced under color of official right, in violation of Title 18, United States Code, Sections 1951 and 2.

### MANNER AND MEANS OF THE CONSPIRACY

3.    The manner and means by which DeDAN MILTON and his co-conspirators carried out, and attempted to carry out, the conspiracy included, but were not limited to, the following:

a.  misusing the resources and prestige of the City, as well as DeDAN MILTON's and Kandia Milton's powers, responsibilities and duties arising from their positions as City officials, for the personal financial benefit of DeDAN MILTON, Kandia Milton, and others;

b.  causing payments to be made and other things of value to be given to DeDAN MILTON and Kandia Milton from persons doing business or seeking to do business in and with the City by inducing the reasonable belief that giving such things of

value would influence DeDAN MILTON's and Kandia Milton's performance of, or failure to perform, actions within their powers, responsibilities and duties as City officials;

    c.  Transacting in cash, inserting middlemen and straw-persons, and breaking up payments to conceal the fact that the coconspirators were unlawfully receiving and distributing money from people doing business in and with the City;

    d.  failing to disclose to the City Clerk and the Detroit Board of Ethics DeDAN MILTON's and Kandia Milton's pecuniary interest in transactions involving the City in order to conceal that interest from the City Council and the public; and

    e.  concealing and otherwise protecting those corrupt and illegal activities from detection by law enforcement to avoid possible criminal prosecution.

## OVERT ACTS

4.  In furtherance of the conspiracy and to affect its objects, the defendants and others committed a number of overt acts in the Eastern District of Michigan and elsewhere, including the following:

### *Grand River & Wyoming Payments*

5.  In about 2003, at the direction of DeDAN MILTON, Rivers met in Detroit with "City Official E."

6.  In about 2003, at the direction of City Official E, Rivers contacted "Real Estate Developer #1," who had a pending application with the City to change the zoning of a property located near Grand River Road and Wyoming Avenue, at which time Rivers offered Real Estate

Developer #1 Rivers's services in helping change the zoning so part of the property could be converted to a different commercial use.

7.    In about 2003, in Farmington Hills, Michigan, Real Estate Developer #1 gave Rivers $5,000 in cash in connection with the pending zoning request, purportedly to serve as the developer's consultant, although Rivers was not asked to do, nor did he do, any work on the zoning request.

8.    In about 2003, following successful re-zoning of the property, Rivers gave DeDAN MILTON $2,500 in cash, half of Rivers's payment, as a reward for introducing Rivers to City Official E.

### 8th Precinct Police Station Payments

9.    In about the spring of 2006, Real Estate Developer #1 offered Rivers $25,000 to help "Real Estate Developer #2" buy the 8th Precinct police station for conversion into a retail shopping center.

10.    In about the spring of 2006, DeDAN MILTON agreed to help Rivers facilitate the sale.

11.    In about the fall of 2006, DeDAN MILTON met with officials from the City of Detroit's Planning & Development Department regarding the sale of the 8th Precinct property.

12.    In about the fall of 2006, DeDAN MILTON, Kandia Milton, Rivers and Real Estate Developer #1 met with officials from the Planning & Development Department regarding the sale of the 8th Precinct property, at which time DeDAN MILTON encouraged the officials to move forward with the sale.

13.    In about February 2007, following the sale of the 8th Precinct to Real Estate Developer #2, Rivers met Real Estate Developer #2 outside the developer's business in Detroit, at which time Real Estate Developer #2 gave Rivers $25,000 in cash.

14.    In about February 2007, Rivers gave DeDAN MILTON and Kandia Milton each about $6,000 in cash for their help in the sale of the 8th Precinct.

***Camp Brighton Payment***

15.    In about late 2006, a "Businessman" offered Rivers $100,000 to help the Businessman purchase Camp Brighton from the City.

16.    In about late 2006, Rivers offered DeDAN MILTON some of Rivers's future payment to help Rivers facilitate the sale.

17.    In about late 2006, after learning that Camp Brighton could not be developed for residential/commercial uses, the Businessman informed Rivers that a Non-Profit Entity wanted to buy the property instead, but that the Non-Profit Entity could only pay Rivers $50,000 for his help purchasing the property.

18.    In about late 2006, Rivers advised DeDAN MILTON of the payment reduction.

19.    In about late 2006, DeDAN MILTON and Kandia Milton agreed to help Rivers encourage the City administration and City Council to approve the sale of Camp Brighton to the Non-Profit Entity for $3.5 million.

20.    In about the fall of 2006, DeDAN MILTON, Kandia Milton, Rivers and the Businessman met with officials from the Planning & Development Department regarding the sale of Camp Brighton, at which time DeDAN MILTON encouraged the officials to move forward with the sale.

21.    In about 2007, Kandia Milton provided City Council with information regarding the Non-Profit Entity's ability to pay the proposed sale price.

22.    In about 2007, Kandia Milton spoke at City Council sessions about the proposed sale.

23.    In about the fall of 2007, following the sale of Camp Brighton to the Non-Profit Entity, Rivers and Kandia Milton agreed that the $50,000 payment from the Non-Profit Entity should be allocated roughly as follows:  $20,000 to Rivers; $20,000 to Kandia Milton; and $10,000 to DeDAN MILTON.

24.    In about the fall of 2007, Rivers had conversations with DeDAN MILTON and Kandia Milton regarding how to obtain the payment from the Non-Profit Entity.

25.    In about the fall of 2007, Rivers asked "the Middleman," a longtime friend and associate of Rivers and the Miltons, to accept the Non-Profit Entity's payment for Rivers.

26.    In about early September 2007, the Middleman faxed a phony invoice to the Non-Profit Entity itemizing work the Middleman allegedly performed from November 2006 to August 2007 to secure the sale, including alleged meetings with City officials and agencies.

27.    On about September 21, 2007, Non-Profit Entity officials wrote a check to the Middleman's company for $50,000, which the Middleman deposited into his business bank account.

28.    In about early October 2007, the Middleman prepared a handwritten note reallocating the Non-Profit Entity's $50,000 payment, as follows:  $10,000 to DeDAN MILTON, $19,500 to Rivers; $19,000 to Kandia Milton; and $1,500 to the Middleman.

29.    In about early October 2007, the Middleman broke up the Non-Profit Entity payment into the following checks, listed in order of check number:

| Check # | Recipient | Amount | Purported Date Check Written | Date Deposited |
|---|---|---|---|---|
| -- | Middleman | $5,000 | Oct. 4, 2007 | -- |
| 992 | DeDAN MILTON | $5,000 | Sept. 23, 2007 | Oct. 10, 2007 |
| 993 | DeDAN MILTON | $5,000 | Oct. 1, 2007 | Oct. 10, 2007 |
| 994 | Rivers | $7,500 | Oct. 10, 2007 | Oct. 17, 2007 |
| 995 | Rivers | $7,500 | Oct. 15, 2007 | Oct. 31, 2007 |
| 996 | Kandia Milton's Associate | $4,500 | Sept. 27, 2007 | Dec. 7, 2007 |
| 997 | Kandia Milton's Associate | $4,500 | Oct. 5, 2007 | Oct. 25, 2007 |
| 998 | Kandia Milton's Associate | $5,000 | Oct. 10, 2007 | Dec. 7, 2007 |
| 999 | Kandia Milton | $5,000 | Oct. 17, 2007 | Oct. 23, 2007 |

30.    In about early October 2007, the Middleman gave Rivers about $4,500 in cash as well as $15,000 in checks.

31.    In about early October 2007, the Middleman gave DeDAN MILTON $10,000 in checks.

32.    In about early October 2007, the Middleman gave Kandia Milton $19,000 in checks, which were written to Kandia Milton and an associate of Kandia Milton.

## COUNT TWO

### (18 U.S.C. § 666(a) – Bribery Concerning Programs Receiving Federal Funds)

1.  The Grand Jury incorporates by reference paragraphs 1 through 7 of the "General Allegations" above as if they were set forth in full herein.

2.  In about October 2007, in the Eastern District of Michigan, defendant DeDAN C. MILTON, while an agent of the City of Detroit and aiding and abetting others, including another agent of the City, an entity that received more than $10,000 in federal funding during the calendar year 2007, did corruptly solicit and demand for the benefit of any person, and accepted and agreed to accept payments of checks, intending to be influenced and rewarded in connection with business and transactions of a value of $5,000 or more with the City of Detroit – that is, the sale of Camp Brighton.

**All in violation of Title 18, United States Code, Sections 666(a) and 2.**

## COUNT THREE

### (18 U.S.C. § 1951 – Interference with Commerce by Extortion)

1.  The Grand Jury incorporates by reference paragraphs 1 through 7 of the "General Allegations" above as if they were set forth in full herein.

2.  In about October 2007, in the Eastern District of Michigan, defendant DeDAN C. MILTON, while an agent of the City of Detroit and aiding and abetting others, including another agent of the City, did knowingly and unlawfully obstruct, delay, and affect interstate commerce through extortion, in that he used his position and the positions of other members of the administration of the Mayor of Detroit to obtain property for the benefit of

himself and others – that is, payments of checks from Jerry M. Rivers, who was assisting a Non-Profit Entity in purchasing Camp Brighton, with the consent of Rivers induced under color of official right.

**All in violation of Title 18, United States Code, Sections 1951 and 2.**

## COUNT FOUR

**(18 U.S.C. § 666(a) – Bribery Concerning Programs Receiving Federal Funds)**

1.     The Grand Jury incorporates by reference paragraphs 1 through 7 of the "General Allegations" above as if they were set forth in full herein.

2.     In about February 2007, in the Eastern District of Michigan, defendant DeDAN C. MILTON, while an agent of the City of Detroit and aiding and abetting others, including another agent of the City, an entity that received more than $10,000 in federal funding during the calendar year 2007, did corruptly solicit and demand for the benefit of any person, and accepted and agreed to accept payments of cash, intending to be influenced and rewarded in connection with business and transactions of a value of $5,000 or more with the City of Detroit – that is, the sale of the 8th Precinct.

**All in violation of Title 18, United States Code, Sections 666(a) and 2.**

## COUNT FIVE

**(18 U.S.C. § 1951 – Interference with Commerce by Extortion)**

1.    The Grand Jury incorporates by reference paragraphs 1 through 7 of the "General Allegations" above as if they were set forth in full herein.

2.    In about February 2007, in the Eastern District of Michigan, defendant DeDAN C. MILTON, while an agent of the City of Detroit and aiding and abetting others, including another agent of the City, did knowingly and unlawfully obstruct, delay, and affect interstate commerce through extortion, in that he used his position and the positions of other members of the administration of the Mayor of Detroit to obtain property for the benefit of himself and others – that is, payments of cash from Jerry M. Rivers, who was assisting Real Estate Developer #2 in purchasing the 8th Precinct, with the consent of Rivers induced under color of official right.

**All in violation of Title 18, United States Code, Sections 1951 and 2.**

THIS IS A TRUE BILL.


s/Foreperson_____
FOREPERSON

BARBARA L. McQUADE
United States Attorney


s/MarkChutkow_____        s/R. Michael Bullotta_____
MARK CHUTKOW                             R. MICHAEL BULLOTTA
Assistant United States Attorney         Assistant United States Attorney

Date:   January 15, 2010.

11

# Criminal Case Cover Sheet

**United States District Court**
**Eastern District of Michigan**

**Case Number    09-20559**

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | **Judge Assigned:** Gerald E. Rosen |
| Yes          No    XX | **AUSA's Initials:** MC |

**Case Title:**      UNITED STATES v. D-3 DEDAN C. MILTON,

**County where offense occurred :**    Wayne County

**Check One:**        XXX  **Felony**              **Misdemeanor**              **Petty**

☐      Indictment – no prior complaint.
☐      Indictment ___ Information ____ based upon prior complaint [Case number: 08-30065 ]
■      Indictment ___ Information _X_  based upon LCrR 57.10 (d) [Complete Superseding section below].

## Superseding Case Information:

**Superseding to Case No:** 09-20559 ____    **Judge:** Gerald E. Rosen

☐      Original case was terminated; no additional charges or defendants.
☐      Corrects errors; no additional charges or defendants.
☐      Involves, for plea purposes, different charges or adds counts.
■      Embraces same subject matter but adds the additional defendants or charges below:

_January 20, 2010_
Date

MARK CHUTKOW
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9168
E-Mail: Mark.Chutkow@usdoj.gov

[1] Companion cases are matters in which it appears that substantially similar evidence will be offered at trial or the same of related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

5/1/99